

SEALED

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br>v.<br><br>Behrouz Dolatzadeh,<br>(Counts 1 - 2)<br><br>Defendant. | CR '12 0258 PHX DGC ECV<br><br>**INDICTMENT**<br><br>VIO:  18 U.S.C. § 371<br>(Conspiracy to Violate Arms Export Control Act and Conspiracy to Export in Violation of Sanctions)<br>Count 1<br><br>50 U.S.C. §§ 1702 and 1705(a)<br>(Attempted Export in Violation of Sanctions)<br>Count 2<br><br>Forfeiture Allegation |

THE GRAND JURY CHARGES:

GENERAL ALLEGATIONS

**Defendant**

At all times material to this indictment:

1.  BEHROUZ DOLATZADEH (hereinafter "DOLATZADEH") is a citizen of the Islamic Republic of Iran representing that he worked on behalf of the Tehran Fanavar International Group.

**Arms Export Control Act**

2.  In furtherance of world peace and the security and foreign policy of the United

States, the Arms Export Control Act ("AECA") (Title 22, United States Code, Section 2778) authorizes the President of the United States ("the President") to control the export of "defense articles" by designating items, such as military aircraft and military aircraft components, on the United States Munitions List (the "Munitions List").

3. The Arms Export Control Act and its attendant regulations, the International Traffic in Arms Regulations ("ITAR") (Title 22, Code of Federal Regulations, Sections 120-130), require a person to apply for and obtain a validated export license from the Directorate of Defense Trade Controls ("DDTC") of the United States Department of State before exporting arms, ammunition, or articles of war, which are all classified as defense articles, from the United States. (Title 22, United States Code, Sections 2778(b)(2) and 2794(3), and 22 C.F.R. Section 120.1). The ITAR also prohibits the export or attempt to export from the United States of any defense article for which a license or written approval is required. (22 C.F.R. Section 127.1).

4. In the application for an export license, the exporter is required to state, among other things, the nature of the armaments to be exported, the end recipient of the armaments, and the purpose for which the armaments are intended. These factors and others assist the DDTC in determining whether the export of the armaments would further the security and foreign policy interests of the United States or would otherwise affect world peace.

5. The defense articles which are subject to such licensing requirements are designated on the Munitions List. Those designations are made by the State Department with concurrence of the Defense Department. (Title 22, United States Code, Section 2778(a)(1), and 22 C.F.R. Section 120.2).

6. The Colt M-4 carbine assault rifle is a fully automatic firearm with military applications.

7. Category I (b) of the Munitions List includes fully automatic firearms to .50 inclusive (12.7 mm) (22 C.F.R. §121.1). The Colt M-4 fully automatic firearm has been certified by the DDTC as being a "defense article" in Category I (b) of the Munitions List.

8. It is the policy of the United States to deny licenses with respect to the export of

defense articles whenever an export would not be in furtherance of world peace and the security and foreign policy of the United States. (22 C.F.R. Section 126.1).

9.      At all times relevant to this indictment, defendant DOLATZADEH and Tehran Fanavar International Group, or any other person or entity acting on their behalf, did not apply for, receive, or possess a license to export defense articles of any description.

### The Iran Trade Embargo and the Iranian Transactions Regulations

10.     The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, authorizes the President to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat.

11.     On March 15, 1995, the President issued Executive Order 12957, finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States," and declared "a national emergency to deal with that threat." Executive Order 12957, as expanded and continued by Executive Orders 12959 and 13059 and successive Presidential notices, was in effect at all times relevant to this Indictment.

12.     On May 6, 1995, the President issued Executive Order 12959 and imposed economic sanctions, including a trade embargo, against Iran ("the Iran Trade Embargo"). On August 17, 1997, the President issued Executive Order 13059, renewing the Iran Trade Embargo, which continued throughout the time of the acts set forth herein.

13.     To implement the Iran Trade Embargo, the United States Department of the Treasury, through the Office of Foreign Assets Control ("OFAC"), issued the Iranian Transactions Regulations ("ITR") (31 C.F.R. Part 560). With certain limited exceptions not applicable here, the ITR prohibit, among other things, the export, re-export, sale, or supply, directly or indirectly, from the United States or by a United States person wherever located, to Iran or the Government of Iran, or the financing of such export, re-export, sale, or supply, of any

goods, technology, or services, without prior authorization from OFAC. These regulations further prohibit any transactions that evade or avoid or have the purpose of evading or avoiding any of the prohibitions contained in the ITR, including the unauthorized exportation of goods from the United States to a third country if the goods are intended or destined for Iran.

14. The Iran Trade Embargo and the ITR were in effect at all times relevant to this Indictment.

15. At all times relevant to this Indictment, defendant DOLATZADEH, Tehran Fanavar International Group, or any other person or entity acting on their behalf, did not apply for, receive, or possess a license or authorization from OFAC to export goods, technology, or services, of any description, to Iran.

## COUNT ONE

(Conspiracy to violate AECA and IEEPA)

16. The allegations in Paragraphs 1 through 15 are incorporated and realleged by reference in this Count.

17. Beginning as early as in or about January 2011, the exact date being unknown to the Grand Jury, and continuing through in or about February 2012, in the District of Arizona and elsewhere, the defendant, BEHROUZ DOLATZADEH, with others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree with each other, to commit offenses against the United States, that is,

(a) to export and cause to be exported from the United States to a place outside thereof, defense articles, to wit: fully automatic firearms, which were designated as defense articles on the United States Munitions List, without first obtaining from the Department of State, DDTC, a license or written authorization for such export, in violation of Title 22, United States Code, Section 2778(b)(2), and Title 22, Code of Federal Regulations, Sections 123.1 and 127.1; and

(b) to export and cause the exportation of goods from the United States to Iran in violation of the embargo imposed upon that country by the United States (referenced in

4

paragraphs 23 to 28), without having first obtained the required licenses or authorizations from the Department of the Treasury, OFAC, in violation of Title 50, United States Code, Sections 1702 and 1705(a), and Title 31, Code of Federal Regulations, Sections 560.203 and 560.204;

All in violation of Title 18, United States Code, Section 371.

## OBJECTS OF THE CONSPIRACY

18. The objects of the conspiracy were:

   a. to illegally enrich the conspirators by unlawfully exporting fully automatic firearms from the United States to Iran;

   b. to evade the prohibitions and licensing requirements of AECA, ITAR, IEEPA, and the ITR; and,

   c. to conceal the prohibited activities and transactions from detection by the United States Government so as to avoid penalties and disruption of the illegal activity.

## MANNER AND MEANS OF THE CONSPIRACY

19. The manner and means by which the defendant and his conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

   a. Defendant DOLATZADEH used email accounts and other forms of communication to communicate with conspirators and with other individuals located in the United States, Czech Republic, Jordan and Iran.

   b. Defendant DOLATZADEH negotiated for quotes on behalf of conspirators and others for the purchase of fully automatic firearms located and manufactured in the United States.

   c. Defendant DOLATZADEH placed orders for the purchase of fully automatic firearms located and manufactured in the United States.

   d. Defendant DOLATZADEH caused funds to be used in purchasing fully automatic firearms located and manufactured in the United States.

   e. Defendant DOLATZADEH attempted to cause the export of fully automatic firearms located in the United States to Iran, without the necessary authorization from

5

Department of State, DDTC or Department of Treasury, OFAC.

## OVERT ACTS

20. In furtherance of this conspiracy, and to accomplish its purpose and object, at least one of the conspirators committed and caused to be committed, in the District of Arizona, and elsewhere, at least one of the following overt acts, among others:

    a. In or about January 2011, Individual A, acting on behalf of DOHLAZADEH and others, emailed an U.S company located in Arizona requesting a quote for 3,500 M-4 assault rifles.

    b. On January 10, 2011, a Homeland Security Investigations (HSI) undercover agent (UCA), posing as an independent sales representative, contacted Individual A, by telephone and e-mail, and entered into negotiations with Individual A for the sale of 3,500 M-4 assault rifles. During these negotiations, Individual A agreed to pay $1850.00 per assault rifle and agreed to a transshipment scheme to Syria.

    c. On or about October 6, 2011, DOHLAZADEH traveled to the Czech Republic to inspect weapons including M-4 assault rifles manufactured in the United States.

    d. On or about October 6, 2011, DOHLAZADEH inspected Bushmaster M-4 assault rifles manufactured in the United States.

    e. On or about October 6, 2011, DOHLAZADEH negotiated the purchase and importation into Iran of 400 Bushmaster and 2,600 Colt M-4 assault rifles which are manufactured in the United States.

    f. On or about October 7, 2011, DOHLAZADEH signed a contract for 3,000 new M-4 assault rifles manufactured in the United States be imported into Iran.

    g. On or about October 12, 2011, DOHLAZADEH emailed an individual in the Czech Republic seeking to modify the contract for only Colt M-4 assault rifles and requested an opportunity to inspect a sample.

    h. On or about December 2, 2011, DOHLAZADEH traveled to the Czech Republic to inspect a Colt M-4 assault rifle.

i.    On or about December 2, 2011, DOHLAZADEH inspected a Colt M-4 assault rifle which had been acquired from the District of Arizona.

j.    On or about December 2, 2011, DOHLAZADEH signed a new contract for 500 Colt M-4 assault rifles manufactured in the United States be delivered to Iran.

k.    On or about December 30, 2011, DOHLAZADEH caused 40,000 Euro to be wired into a bank account in the Czech Republic to start the procurement of the Colt M-4 assault rifles and other ammunition.

l.    On or in January 2012, DOHLAZADEH communicated by email and telephone with an individual in the Czech Republic and agreed to travel to the Czech Republic to inspect the 500 Colt M-4 assault rifles prior to their import into Iran.

All in violation of Title 18, United States Code, Section 371, Title 22, United States Code, Section 2278, and Title 50, United States Code, Section 1705(a).

## COUNT 2

### (Attempted Violation of the Iran Embargo)

21.    The allegations in Paragraphs 1 through 20 are incorporated and realleged by reference in this Count.

22.    Beginning as early as in or about January 2011, the exact date being unknown to the Grand Jury, and continuing through in or about February 2012, in the District of Arizona and elsewhere, the defendant, BEHROUZ DOLATZADEH, did knowingly and willfully violate the embargo against Iran by attempting to export 500 Colt M-4 assault rifles, which are fully automatic assault rifles, from the United States to Iran, by way of Czech Republic, without having first obtained the required authorizations from the United States Department of the Treasury's Office of Foreign Assets Control:

All in violation of Title 50, United States Code, Sections 1702 and 1705(a), Executive Orders 12957, 12959, and 13059, and Title 31, Code of Federal Regulations, Sections 560.203 and 560.204, and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

23. The allegations contained in Paragraphs 1 through 22 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

24. Upon conviction of the offenses set forth in this Indictment, defendant, BEHROUZ DOLATZADEH, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following:

25. If any of the property described above, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty,

///
///
///

1  the United States of America shall be entitled to forfeiture of substitute property pursuant to Title
2  21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section
3  2461(c).
4      All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL

/s/

FOREPERSON OF THE GRAND JURY
Date: February 7, 2012

ANN BIRMINGHAM SCHEEL
Acting United States Attorney
District of Arizona

/s/
_____
DAVID A. PIMSNER
Assistant U.S. Attorney